IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

───────────────────────────────────────────────

CHRISTY M. BLYTHE,           )
                             )
     Plaintiff,              )
                             )
v.                           )      No. 18-1028-TMP
                             )
NANCY A. BERRYHILL,          )
ACTING COMMISSIONER OF SOCIAL )
SECURITY,                    )
                             )
     Defendant.              )

───────────────────────────────────────────────

## ORDER AFFIRMING THE COMMISSIONER'S DECISION
───────────────────────────────────────────────

Before the court is plaintiff Christy M. Blythe's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-434; 1381-1385. The parties have consented to the jurisdiction of the United States magistrate judge under 28 U.S.C. § 636(c). For the reasons below, the decision is affirmed.

## I.  FINDINGS OF FACT

On July 28, 2014 and July 30, 2014, Blythe applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (R. 366; 368.) Blythe alleged disability beginning on December 7, 2011, due to lower back disorder, bipolar disorder, and depression. (R. 366; 368; 402.)

Blythe's application was denied initially and upon reconsideration by the Social Security Administration ("SSA"). (R. 243; 244; 280; 281.) At Blythe's request, a hearing was held before an Administrative Law Judge ("ALJ") on November 21, 2016. (R. 142.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Blythe was not disabled from December 7, 2011 through the date of his decision. (R. 96.) At the first step, the ALJ found that Blythe had not "engaged in substantial gainful activity since December 7, 2011, the alleged onset date." (R. 98.) At the second step, the ALJ concluded that Blythe suffers from the following severe impairments: obesity, back disorder, and bipolar disorder.[1] (R. 98-104.) At the third step, the ALJ concluded that Blythe's impairments do not meet or medically equal, either alone or in the aggregate, one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 99.) Accordingly, the ALJ had to then determine whether Blythe retained the residual function capacity ("RFC") to perform past relevant work or could adjust to other work. The ALJ found that:

> [Blythe] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Claimant can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds;

[1]The ALJ used the term affective disorder to describe Blythe's severe mental impairments in his findings, but in the body of his opinion referred to Blythe's bipolar disorder. (R. 98-104.) For the sake of consistency, this opinion uses the more specific term.

occasionally balance, stoop, kneel, crouch, and crawl. Claimant can tolerate up to occasional exposure to vibration, and claimant should avoid all hazards. Claimant can understand, remember, and carryout simple instructions; use judgment; relate with supervisors, coworkers, and the public; and deal with workplace changes.[2]

(R. 100.) The ALJ specifically found that Blythe was able to "lift 20 pounds occasionally, which is consistent with light work." (R. 100). The ALJ then found at step four that Blythe was unable to perform any of her past relevant work. (R. 24-25.) However, at step five the ALJ found that considering Blythe's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Blythe can perform. (R. 25.) Accordingly, on February 13, 2017, the ALJ issued a decision denying Blythe's request for benefits after finding that Blythe was not under a disability because she retained the RFC to adjust to work that exists in significant numbers in the national economy. (R. 96-107.) On December 14, 2017, the SSA's Appeals Council denied Blythe's request for review. (R. 1.) The ALJ's decision then became the final decision of the Commissioner. (R. 1.)

---

[2]Light work is defined in 20 C.F.R. 404.1567(b) as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these

On February 8, 2018, Blythe filed the instant action. Blythe argues that: (1) new material evidence related to Blythe's mental condition justifies remand to the Commissioner; (2) the ALJ erred in weighing the medical opinions in the record; (3) the ALJ erred in not discussing treatment records from one of Blythe's therapists; (4) the ALJ committed legal error by failing to adequately develop the record when he declined to ask a vocational expert certain hypothetical questions; and (5) the ALJ's decision on RFC is not supported by substantial evidence. (ECF No. 11; ECF No. 14.)

## II.   CONCLUSIONS OF LAW

### A.    Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir.

---

activities.

2018); <u>Cole v. Astrue</u>, 661 F.3d 931, 937 (6th Cir. 2011); <u>Rogers v. Comm'r of Soc. Sec.</u>, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Kirk v. Sec'y of Health & Human Servs.</u>, 667 F.2d 524, 535 (6th Cir. 1981) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" <u>Abbott v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990) (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." <u>Barker v. Shalala</u>, 40 F.3d 789, 794 (6th Cir. 1994) (quoting <u>Smith v. Sec'y of Health & Human Servs.</u>, 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. <u>Ulman v. Comm'r of Soc. Sec.</u>, 693 F.3d 709, 713 (6th Cir. 2012) (citing <u>Bass v. McMahon</u>, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997);

Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.    The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir.

1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past

relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. <u>See</u> 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

## C. Whether New Material Evidence Related to Blythe's Mental Condition Justifies Remand to the Commissioner

Blythe's first argument is that new material evidence related to Blythe's mental condition justifies remand to the Commissioner. Blythe has obtained an evaluation of the effect of her mental limitations on her ability to do work-related activities from her current treating therapist, Russell Andrew Goad. (ECF No. 14.) In the portion of his evaluation that is inconsistent with the ALJ's RFC finding, Goad determined that Blythe has marked limitations in her ability to respond appropriately to unusual work situations and changes in a routine work setting. (<u>Id.</u> at 15.) Goad also found that Blythe's limitations in this regard dated back to July 8, 2016, before the date of the ALJ's decision. (<u>Id.</u>)

Courts may remand a case to an ALJ for review of additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . .

-8-

. . ." 42 U.S.C. § 405(g). As the language of the statute indicates, this places the burden of production upon the claimant. See Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 839 (6th Cir. 2016) (citing 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001)).

"[E]vidence is 'material' only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence.'" Deloge v. Comm'r of Soc. Sec. Admin., 540 F. App'x 517, 519 (6th Cir. 2013) (quoting Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988)). A conclusory opinion about work-related limitations not backed up by specific clinical findings is not material evidence, even if it comes from a treating source. See Hammond v. Apfel, 211 F.3d 1269 (6th Cir. 2000); Strong v. Soc. Sec. Admin., 88 F. App'x 841, 845-46 (6th Cir. 2004) ("Although [the medical source] opined long after the relevant period that Claimant had been disabled during the relevant period, such a retrospective and conclusory opinion is not entitled to significant weight because it is not supported by relevant and objective evidence." (citing Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1527(d)(2)-(3))).

The materiality standard is not met here. First, Goad's opinion does not demonstrate Blythe's severe impairments were the

cause of her work-related limitations. The ALJ found that the record suggested that Blythe's reported mental symptoms in 2016 were more likely to be a product of situational stressors than a product of her bipolar disorder based on Blythe's treatment notes. (R. 103). The Act defines disability as being the "inability to engage in any substantial gainful activity *by reason of* any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1) (emphasis added). This means that a claimant's inability to engage in substantial gainful activity must be caused by their impairment. Goad's opinion only goes to the extent of Blythe's limitations, not to their cause. Given that the ALJ had found Blythe's symptoms were not caused by her impairment, Goad's opinion would not have a reasonable probability of altering the ALJ's decision.

Second, Goad's opinion is conclusory and not supported by specific clinical findings. Even treating source physician opinions, which ALJs are ordinarily bound to defer to, are not material new evidence if they are conclusory or without specific clinical findings. Hammond, 211 F.3d at 1269. Here, Goad only gives his opinion as to Blythe's impairments and identifies the general nature of Blythe's symptoms. (ECF No. 14., 14-15.) This is not sufficient to represent material new evidence.

**D.   Whether the ALJ Erred in Weighing the Medical Opinions in the Record**

Blythe argues that the ALJ did not give proper weight to the medical opinions in the record when formulating the RFC. (ECF No. 14.) Specifically, Blythe argues the ALJ made three mistakes: (1) the ALJ gave too much weight to the opinions of two non-examining medical professionals, Dr. JoiSanne Richmond and Dr. Frank Kupstas; (2) the ALJ gave too little weight to the opinions of two examining medical professionals, Dr. Donita Keown and Dr. Samuel Chung; and (3) the ALJ gave too little weight to the opinion of Blythe's therapist, Fred Claiborne.

In formulating an RFC finding, "the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." Eslinger v. Comm'r of Soc. Sec., 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)); see also Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010). "An opinion from a treating physician is 'accorded the most deference by the SSA' because of the 'ongoing treatment relationship' between the patient and the opining physician. A nontreating source, who physically examines the patient 'but does not have, or did not have an ongoing treatment relationship with' the patient, falls next along the continuum. A nonexamining source, who provides an opinion based solely on review of the patient's existing medical records, is afforded the least deference." Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012) (quoting Smith v. Comm'r of Soc.

-11-

Sec., 482 F.3d 873, 875 (6th Cir. 2007)) (internal citations omitted). "ALJs must evaluate every medical opinion [they] receive by considering several enumerated factors, including the nature and length of the doctor's relationship with the claimant and whether the opinion is supported by medical evidence and consistent with the rest of the record." Stacey v. Comm'r of Soc. Sec., 451 F. App'x 517, 519 (6th Cir. 2011). When an ALJ's decision rejects the opinion of a medical expert who is not a treating physician, the decision "must say enough to allow the appellate court to trace the path of [the ALJ's] reasoning." Id. (internal citation and quotation omitted).

Social Security regulations draw a distinction between "acceptable medical sources" and other sources. See 20 C.F.R. 404.1502; 20 C.F.R. 416.902. This terminology is somewhat misleading. Contrary to what the name might suggest, a significant number of medical sources whose opinions ALJs are obliged to consider are deemed to not be acceptable medical sources, including "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. . . ." SSR 06-03P, 2006 WL 2329939, at *2. In the modern era, these kinds of medical professionals "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." Id. at *3. The SSA has instructed that opinions

from these sources are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Id.

When considering what weight to give to the opinion of an other medical source, the ALJ employs the same factors used for analyzing a treating source's opinion, and applies whatever factors are relevant to the opinion. 20 C.F.R. § 404.1527(f)(1). Those factors include the length and nature of the treatment relationship, the frequency of exams, the evidence upon which the therapist bases her or his opinion, the opinion's consistency with the record as a whole, whether the therapist has specialized in her or his area of practice, and any other relevant factor, like the source's familiarity with the claimant's full medical record. 20 C.F.R. § 404.1527(c)(2)–(6). After considering all the pertinent factors, if the ALJ determines that the opinion might impact the outcome of the case, then the ALJ must explain the weight given to the opinion in a fashion that "allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." 20 C.F.R. § 404.1527(f)(2).

1. Whether the ALJ Gave Proper Weight to Dr. JoiSanne Richmond's Opinion

Blythe objects to the ALJ's decision to give great weight to the opinion of Dr. JoiSanne Richmond, a state agency non-examining

physician.[3] (ECF No. 14; R. 100, 106.) Blythe argues that chronic pain caused by a spinal injury is not something that can be readily measured by a non-examining physician reviewing a paper file, citing to Hallgring v. Callahan, 975 F. Supp. 84, 92 (D. Mass. 1997). Blythe contends the ALJ's decision to give great weight to Dr. Richmond's opinion was thus in error.

Although examining sources are generally entitled to more deference than non-examining sources, an ALJ may give greater weight to a non-examining source in appropriate circumstances. Norris v. Comm'r of Soc. Sec., 461 F. App'x 433, 439 (6th Cir. 2012) ("Although [claimant] is correct that the opinions of nontreating sources are generally accorded more weight than nonexamining sources, it is not a *per se* error of law, as [claimant] suggests, for the ALJ to credit a nonexamining source over a nontreating source."). An ALJ may assign greater weight to the opinion of a non-examining source if that source's opinion is consistent with the record as a whole. Id.

---

[3]Generally, the ALJ gave great weight to Dr. Richmond's opinions. (R. 100.) However, the ALJ rejected two of Dr. Richmond's conclusions. (R. 100.) First, the ALJ rejected Dr. Richmond's view that Blythe could lift up to 50 pounds occasionally, finding that the claimant could lift only 20 pounds occasionally. (R. 100.) Second, the ALJ found that Dr. Richmond overestimated Blythe's range of postural movement. (R. 100.) The ALJ explained that he rejected the second conclusion because he believed that Dr. Richmond had not fully considered the impact of Blythe's obesity on her range of movement. (R. 100.) The ALJ did not explain why he rejected Dr. Richmond's first conclusion.

This general principle applies in cases involving pain as a disabling condition. The SSA requires ALJs to consider evidence from non-examining physicians when evaluating allegations of pain as a disabling condition. SSR 16-3P, 2016 WL 1119029, at *6. ("Medical evidence from medical sources that have not treated or examined the individual is also important in the adjudicator's evaluation of an individual's statements about pain or other symptoms. . . . Adjudicators at the hearing level or at the Appeals Council level must consider the findings from these medical sources even though they are not bound by them."). There is no categorical rule barring ALJs from giving greater weight to non-examining sources than examining sources when doing so is appropriate given the available evidence. <u>Blakley v. Comm'r Of Soc. Sec.</u>, 581 F.3d 399, 409 (6th Cir. 2009) ("'In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.'" (quoting SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). "In a battle of the experts, the agency decides who wins." <u>Justice v. Comm'r Soc. Sec. Admin.</u>, 515 F. App'x 583, 588 (6th Cir. 2013).

<u>Hallgring</u> is not to the contrary. <u>Hallgring</u>, 975 F. Supp. at 92. In <u>Hallgring</u>, an ALJ rejected the opinion of a claimant's longtime treating physician about the extent to which claimant's chronic fatigue syndrome affected claimant's RFC in favor of a

state non-examining physician's opinion.  Id. at 88-89.  The state non-examining physician reviewed only a small portion of the patient's medical record in reaching his conclusion.  Id. at 90. The Hallgring court, citing SSA policy, noted that the severity of symptoms from chronic fatigue syndrome can vary significantly over time.  Id.  In light of this, the court held that it was error for the ALJ to give greater weight to a non-treating source with little longitudinal evidence than a treating source with the patient's full medical history.  Id. at 90-91.  The court reversed and remanded for an award of benefits.  Id. at 92.  Hallgring thus primarily illustrates the importance of longitudinal evidence when evaluating conditions that have symptoms that vary over time.

Here, the ALJ assigned great weight to Dr. Richmond's opinion because she had program knowledge, was familiar with longitudinal evidence regarding Blythe's treatment, and her opinion was consistent with the record as a whole.  (R. 106.)  In the face of conflicting medical opinion evidence, both familiarity with longitudinal evidence and consistency with the record are appropriate reasons to give great weight to a particular medical opinion.  See Blakley, 581 F.3d at 409; Norris 461 F. App'x at 439. Longitudinal evidence is particularly important in a case such as this one, where the severity of symptoms may vary over time. Hallgring, 975 F. Supp. at 92.  As a result, the court finds no

erroring the ALJ's decision to give great weight to Dr. Richmond's opinion.

2.   Whether the ALJ Gave Proper Weight to Dr. Frank Kupstas's Opinion

Blythe next objects to the ALJ's decision to give great weight to the opinion of Dr. Frank Kupstas, a state agency non-examining psychologist.  (ECF No. 14; R. 104-106.)  Blythe argues that the ALJ should not have given great weight to Dr. Kupstas's opinion because of his status as a non-examining source, but does not offer a more specific objection to the ALJ's treatment of Dr. Kupstas's opinion.

The ALJ gave great weight to Dr. Kupstas's opinion because the opinion was in his area of specialization, he was familiar with the case record, and had program knowledge.  (R. 104-105.)  There is no categorical rule that non-examining sources may not be given great weight.  Norris 461 F. App'x at 439.  As such, the ALJ's decision to assign great weight to Dr. Kupstas's opinion was not in error.

Furthermore, even if the ALJ's decision to give great weight to Dr. Kupstas's opinion was erroneous because of Dr. Kupstas's status as a non-examining psychologist, such error was harmless.  Dr. Kupstas's opinion was almost identical to — and largely based upon — the opinion of an examining psychologist, Dr. William Fulliton.  (R. 234; 238-239; 759.)  The ALJ assigned partial weight to Dr. Fulliton's opinion, but expressed that to the extent Dr.

Fulliton's opinion varied from Dr. Kupstas's he credited Dr. Kupstas over Dr. Fulliton because of Dr. Kupstas's greater familiarity with the case record and program knowledge. (R. 104.) Such a determination is within the ALJ's acceptable zone of choice, and in any event, the court has been unable to find a material difference between the two psychologists' opinions. (R. 238-239; 759.) Because of this, even if the decision to give Dr. Kupstas great weight was in error, the ALJ's decision regarding the effect of Blythe's mental impairments on her RFC would still be supported by the opinion of an examining psychologist.

3. <u>Whether the ALJ Gave Proper Weight to Dr. Donita Keown's Opinion</u>

Blythe next objects to the ALJ's decision to give little weight to Dr. Donita Keown's opinion. (ECF No. 14; R. 104-105.) Blythe's argument here is the same as earlier: that Blythe's examining physicians were better positioned to evaluate Blythe's impairments than non-examining physicians.

The ALJ identified six reasons for giving little weight to Dr. Keown's opinion: (1) that the opinion was not supported by explanations; (2) that Dr. Keown only reviewed a small portion of the available records; (3) that Blythe did not cooperate with Dr. Keown's exam, interfering with the results; (4) that Dr. Keown's overall conclusions were in conflict with some of the results of tests she performed; (5) that the opinion was contradicted by

Blythe's activities of daily life; and (6) that the opinion was contrary to the findings of the non-examining state agency physician, Dr. Richmond. (R. 104-105.) Each of these reasons is supported by substantial evidence in the record. Dr. Keown's conclusions are not supported by explanations, but simply state work-related limitations without identifying which earlier clinical findings support them. (R. 754.) Dr. Keown herself acknowledged that the medical records she had access to were incomplete. (R. 752.) Dr. Keown also said that Blythe did not fully cooperate with the thoracolumbar column exam, "throw[ing] off angles measured during the exam." (R. 754.) Likewise, as the ALJ noted, there is a tension between Dr. Keown's finding that Blythe had normal strength in her arms, hands, and legs and Dr. Keown's conclusions about the extent of Blythe's impairments. (R. 105.) Similarly, the record reflects that Blythe cares for an autistic child, and a reasonable inference could be drawn that this activity is not consistent with the severity of impairment Dr. Keown claims to identify. (R. 105.) But see Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 248 (6th Cir. 2007) (finding that activities such as driving, cleaning an apartment, caring for pets, reading, exercising, and watching the news "are not comparable to typical work activities"). Finally, Dr. Richmond's opinion conflicts with Dr. Keown's, and "[i]n a battle of the experts, the agency decides who wins." (R. 105.) Justice, 515 F. App'x at 588. In light of

the ALJ's clearly explained and well-reasoned explanation for why he gave Dr. Keown's opinion little weight, the ALJ's decision was not in error.

4.    <u>Whether the ALJ Gave Proper Weight to Dr. Samuel Chung's Opinion</u>

Blythe next objects to the ALJ's decision to give little weight to Dr. Samuel Chung's opinion. (ECF No. 14; R. 104-105.) First, Blythe argues that Dr. Chung, as an examining physician, ought to have been given greater weight because he was better positioned to evaluate Blythe's condition than a non-examining physician. Second, Blythe contends the ALJ erred in disregarding Dr. Chung's conclusion that the plaintiff could not engage in substantial gainful activity. Finally, Blythe argues that the ALJ erred in finding that Dr. Chung's opinion that Blythe suffered from 9% whole person impairment was inconsistent with both Dr. Chung's other conclusions and with a finding of total disability. Whole person impairment, Blythe says, is a measure used in worker's compensation claims, but cannot be appropriately used in Social Security disability determinations. Worse still, Blythe contends that the ALJ fundamentally misunderstood what this score meant. Blythe asserts that a 9% whole person impairment score reflects a very serious degree of impairment consistent with total disability, contrary to the ALJ's understanding.

The ALJ listed four reasons for assigning Dr. Chung's opinion little weight. (R. 104-105.) Those reasons are that: (1) Dr. Chung lacked program knowledge; (2) Dr. Chung did not support his conclusions with relevant specific evidence; (3) Dr. Chung's opinion was not supported by the record as a whole; and (4) Dr. Chung's findings were not internally consistent, particularly his finding that Blythe had 9% whole body impairment.

Dr. Chung's lack of program knowledge is of particular importance here because Dr. Chung's findings were not framed in terms used by the SSA to evaluate the effect of a severe impairment on RFC. (R. 104-105.) Dr. Chung found that Blythe could not engage in "prolong[ed]" walking, standing, or postural activities. (R. 807.) What this means in the context of an RFC determination is not at all clear. A medical opinion framed in terms used by the SSA can be used to formulate an RFC, and then that RFC can be used to determine whether jobs exist in substantial numbers in the national economy that the claimant is able to perform. See Lancaster v. Comm'r of Soc. Sec., 228 F. App'x 563, 572 (6th Cir. 2007). Unless a physician frames his or her conclusions in terms used by the SSA though, it may not be possible for an ALJ to adapt a physician's opinion into a form that can support an RFC. Cf. HALLEX I-2-8-25(A) (forbidding ALJs from using "[n]on-prescribed standardized language in the rationale" of an opinion). This issue

alone justifies the ALJ's decision to give little weight to Dr. Chung's opinion.

The ALJ's other explanations for giving little weight to Dr. Chung's opinion are also reasonable. Dr. Chung's opinion is not backed with specific explanations and does conflict with other evidence in the record, particularly the opinions of the state agency physicians. (R. 105.) The absence of specific explanations is particularly troubling here because the results of some of the tests Dr. Chung performed suggest Blythe is less impaired than he concluded. (R. 806-807.) Dr. Chung's physical examination found only mild limitations in Blythe's range of movement. (R. 806.) Dr. Chung's review of Blythe's MRI results found only mild spinal abnormalities. (R. 806-807.) And yet Dr. Chung concluded, for unclear reasons, that Blythe had a very high degree of impairment. (R. 807.) Given this, it is difficult to tell how Dr. Chung arrived at his overall conclusion.

Blythe's argument that the ALJ erred in disregarding Dr. Chung's opinion that Blythe was unable to engage in substantial gainful activity is mistaken. Whether a claimant is disabled is a matter for the ALJ to decide, not a doctor. Coldiron v. Comm'r of Soc. Sec., 291 F. App'x 435, 439 (6th Cir. 2010) ("The "Social Security Act instructs that the ALJ — not a physician — ultimately determines a claimant's RFC."); Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a

claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner.").

This leaves Blythe's argument about the ALJ's consideration of Dr. Chung's whole body impairment score. "[I]mpairment ratings are not correlated in any way with the [S]ocial [S]ecurity disability program." Begley v. Sullivan, 909 F.2d 1482, 1482 (6th Cir. 1990). A serious problem with such ratings is that they "fail to reveal whether a particular work-related limitation is appropriate." Smith v. Comm'r of Soc. Sec., No. 2:16-CV-1010, 2018 WL 258905, at *4 (S.D. Ohio Jan. 2, 2018), report and recommendation adopted, No. 2:16-CV-1010, 2018 WL 513195 (S.D. Ohio Jan. 23, 2018). However, impairment ratings are "medical evidence" that the ALJ is obliged to consider, provided that they are not treated as being "outcome determinative." Begley, 909 F.2d at 1482.

Assuming without deciding that the ALJ erred in considering Dr. Chung's impairment score, the error was harmless. Rabbers v. Comm'r Soc. Sec. Admin., 582 F.3d 647, 654 (6th Cir. 2009) (holding that ALJ decisions are subject to harmless error review except when they deprive claimants of procedural rights). The ALJ had several well-developed reasons for giving little weight to Dr. Chung's findings. Even without considering his impairment rating, Dr. Chung's failure to frame his conclusions in terms that could be used to formulate an RFC and Dr. Chung's failure to provide

specific evidence to explain his conclusions are enough to allow this court to conclude that the ALJ did not err in giving little weight to Dr. Chung's opinion.

   5.   Whether the ALJ Gave Proper Weight to Fred Claiborne's
        Opinion

   Blythe next objects to the ALJ's decision to give little weight to the opinion of Fred Claiborne, one of Blythe's therapists. (ECF No. 14; R. 104-105.) Blythe argues that the ALJ improperly discounted Claiborne's opinion because of his status as an nonacceptable medical source, citing this court's decision in Gursky v. Colvin, No. 16-CV-2654-TMP, 2017 WL 6493149, at *6 (W.D. Tenn. Dec. 19, 2017). Blythe further argues that Claiborne, as an in-person treating medical professional, was better positioned to evaluate Blythe's mental condition than the non-examining state agency psychologist.

   The ALJ identified three reasons for giving Claiborne's opinion little weight: (1) that Claiborne is not an acceptable medical source; (2) that Claiborne's conclusions, particularly his GAF score, were not supported by his clinical findings; and (3) that it ran counter to the opinions of Dr. Kupstas and Dr. Fulliton. (R. 104.)

   The ALJ's first rationale is proper. It is true that an ALJ errs when he or she discounts the opinion of a therapist or other nonacceptable medical source on that ground alone, or when

accompanied by incoherent justifications. <u>Gursky</u>, 2017 WL 6493149 at *6. But when an ALJ is presented with competing medical opinions, two from acceptable medical sources in their area of specialty and one from a nonacceptable medical source, the ALJ does not err in choosing the opinions of the acceptable medical sources over the opinion of the nonacceptable medical source. SSR 06-03P, 2006 WL 2329939, at *2 ("The fact that a medical opinion is from an acceptable medical source is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an acceptable medical source because . . . acceptable medical sources are the most qualified health care professionals.") (internal quotations and citations omitted). Acceptable medical sources have greater qualifications than nonacceptable medical sources. <u>Id.</u> Just as an ALJ does not err in choosing the opinion of a physician in his or her area of specialty over the opinion of another physician, an ALJ does not err in acknowledging the comparative qualifications of the different experts in a case. <u>See</u> 20 C.F.R. § 404.1527(c) (identifying an expert's "specialization" as a factor to consider in weighing medical opinions); <u>Gayheart v. Comm'r of Soc. Sec.</u>, 710 F.3d 365, 376 (6th Cir. 2013). The ALJ did nothing more than that here.

The ALJ's second reason for discounting Claiborne's opinion is also well-supported. The ALJ disputed the validity of Claiborne's GAF score in light of his clinical findings. (R. 104.) In doing

so, the ALJ identified specific evidence from Claiborne's treatment notes that indicated that his GAF score was too low. (R. 104.) Claiborne gave Blythe a GAF score of 40.5. (R. 104.) The ALJ observed that a GAF score of 40.5 would involve "impairment in reality testing," but that Claiborne's treatment notes said Blythe "had good contact with [her] surroundings. . . ." (R. 104.) Similarly, the ALJ noted that a GAF score of 40.5 would lead to major impairments in Blythe's ability to control her mood, but that Claiborne observed that Blythe "displayed no over signs of mania [and] no overt signs of anger [or] agitation . . . ." (R. 104.) Overall, the ALJ found that he could not follow why Claiborne had assigned such low scores based on his own findings.

Finally, the ALJ did not err in discounting Claiborne's opinion because it ran counter to other medical opinions. Two psychologists found that Blythe was substantially less limited in her ability to function than Claiborne did. (R. 104.) The ALJ was empowered to resolve conflicts in the evidence. Norris, 461 F. App'x at 439. He did not err in doing so here.

## E. Whether the ALJ Erred not Discussing Treatment Notes from One of Blythe's Therapists

Blythe's next argument is that the ALJ erred because he did not discuss treatment notes from Russell Andrew Goad, Blythe's other treating therapist.

As a preliminary matter, it is worth noting that Blythe did not raise this argument until her reply brief. This makes the argument untimely. Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008). When a party raises a new issue in a reply brief, the other party does not have a chance to respond. Id. This creates fairness concerns. Id. As a result, the court has discretion to deem arguments not timely raised as waived. Id. The court does so here.

Were the court to consider this argument on the merits, it would not be meritorious. "An ALJ need not discuss every piece of evidence in the record for his decision to stand," because an ALJ's failure to discuss evidence does not necessarily mean that the evidence was not considered. Thacker v. Comm'r of Soc. Sec., 99 F. App'x 661, 665 (6th Cir. 2004); see also Dykes ex rel. Brymer v. Barnhart, 112 F. App'x 463, 467 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)).

Besides, the ALJ did discuss the treatment notes prepared by Goad. (R. 101-103.) Several staff members at Blythe's behavioral healthcare provider saw her during the time period covered by the record. (R. 829-912.) Of those staff members, only Claiborne conducted an overall assessment of her level of functioning in

-27-

opinion form. (R. 848-849). Other staff members, including Goad, prepared treatment notes after Blythe's appointments. (R. 829-912). The ALJ discussed both of these forms of evidence in his opinion. (R. 96-107.) The fact the ALJ did not discuss Goad's treatment notes separately and by name does not suggest that he failed to consider them. Blythe's argument is without merit.

## F. Whether the ALJ Erred in Failing to Ask the Vocational Expert Certain Hypothetical Questions

Blythe next argues that the ALJ failed to ask the vocational expert a hypothetical question that incorporated those limitations found by Dr. Keown. Blythe argues this violated the ALJ's duty to develop the record. (ECF No. 11.)

"'A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.'" Thomas v. Comm'r of Soc. Sec., 550 F. App'x 289, 290 (6th Cir. 2014) (quoting Smith v. Halter, 307 F.3d 377, 378 (6th Cir. 2001)). However, if the hypothetical question does not accurately describe the claimant's limitations, the vocational expert's response does not constitute substantial evidence to support the denial of benefits. See Lancaster v. Comm'r of Soc. Sec., 228 F. App'x 563, 573 (6th Cir. 2007) ("If the hypothetical question does not accurately portray Plaintiff's physical and

mental state, the vocational expert's testimony in response to the hypothetical question may not serve as substantial evidence in support of the ALJ's finding that Plaintiff could perform other work."); Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("The hypothetical question also fails to describe accurately Howard's physical and mental impairments; a defect which, as we have stated, is fatal to the VE's testimony and the ALJ's reliance upon it."). However, the "ALJ is required to incorporate only those limitations that he or she accepted as credible" into the hypothetical. Lester v. Soc. Sec. Admin., 596 F. App'x 387, 389-90 (6th Cir. 2015) (citing Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 516 (6th Cir. 2010) & Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993)).; see also Brantley v. Comm'r of Soc. Sec., 637 F. App'x 888, 897 (6th Cir. 2016) (noting that "a hypothetical need not include a comprehensive list of a claimant's medical conditions").

Here, the ALJ incorporated those specific limitations he ultimately found credible into a hypothetical question. (R. 192-193.) This satisfies the ALJ's obligation. The ALJ was not obliged to ask an alternate hypothetical based on Blythe's preferred theory of the case. Furthermore, even if the ALJ had erred in not asking a hypothetical reflecting the specific limitations identified by Dr. Keown, such error was harmless. Blythe was represented by counsel at the hearing, and counsel had

the opportunity to ask the vocation expert questions. (R. 197-206.) Blythe's counsel took that opportunity, and established through hypothetical questions that if Dr. Keown's limitations were included, no jobs existed in substantial numbers in the national economy suitable for Blythe. (R. 198.) Given this, the only purpose of remanding this matter back to the Commissioner on this ground would be to establish evidence in the record that already exists. The court declines to do so.

**G. Whether the ALJ's decision on RFC is supported by substantial evidence**

Blythe next argues that the ALJ's decision is not supported by substantial evidence. Blythe objects particularly to the ALJ's finding that Blythe had the residual functional capacity to perform light work, including the ability to lift 20 pounds occasionally. (R. 100). This finding resolves a dispute between two of the medical source opinions. Dr. Richmond opined that Blythe could occasionally lift 50 pounds and could sit or stand for about six hours in an eight-hour workday, consistent with medium exertion work. (R. 219-220.) Dr. Keown opined that Blythe could occasionally lift 10 to 15 pounds, which is consistent with sedentary level work, but could only remain sitting for three to four hours or remain standing for one to two hours, which, based on the rest of Blythe's vocational profile, is not consistent with either light-level or sedentary-level work. (R. 198; 754.)

The "Social Security Act instructs that the ALJ — not a physician — ultimately determines a claimant's RFC." Coldiron v. Comm'r of Soc. Sec., 291 F. App'x 435, 439 (6th Cir. 2010). Absent a treating source entitled to controlling weight, when a patient's treatment history and objective medical evidence support a particular finding, such a finding is supported by substantial evidence even if it runs counter to the opinions of all medical sources. Rudd v. Comm'r of Soc. Sec., 531 F. App'x 719, 728 (6th Cir. 2013). Nonetheless, the Sixth Circuit has cautioned that "[m]edical conclusions must be left to the examining medical professionals, and 'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings' . . . ." Harvey v. Comm'r of Soc. Sec., No. 16-3266, 2017 WL 4216585, at *7 (6th Cir. Mar. 6, 2017) (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)). The bottom line is that "[n]o bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached." Tucker v. Comm'r of Soc. Sec., No. 18-2300, 2019 WL 2418995, at *5 (6th Cir. June 10, 2019).

Here, the ALJ's finding on Blythe's RFC is largely supported by the opinions of the non-examining state agency physicians, to which the ALJ gave great weight. (R. 100-101.) As discussed

earlier, the ALJ did not err in giving these opinions great weight, nor in discounting the opinions from other medical sources in the record. The ALJ's RFC determination is also supported by the objective medical evidence in the record. Blythe's medical history "lack[ed] documentation of consistent abnormal clinical findings upon examination" and showed Blythe's pain was substantially reduced as a result of treatment. (R. 102-103.) Similarly, the ALJ noted that Blythe's activities of daily living support a finding of nondisability. (R. 101.) Blythe cares for an autistic child and can perform certain activities of daily life without assistance, like driving a car, watching TV, using a computer, and preparing easy meals. (R. 101.) Taken together, the opinions of multiple physicians combined with the objective evidence about Blythe's medical history and activities of daily life represent substantial evidence.

Blythe argues that the ALJ's decision lacked substantial evidence because the ALJ did not appreciate how serious a spinal cord injury must be for treating doctors to order the installation of a spinal cord stimulator. But the existence of contrary evidence in the record does not mean that an ALJ's decision is not supported by substantial evidence. Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 627 (6th Cir. 2016) (quoting Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009)). Here, the ALJ did discuss the placement of a spinal cord stimulator in the

written opinion. (R. 102.) It is not this court's role to reweigh the significance of that evidence.

### III. CONCLUSION

For the reasons above, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

September 10, 2019
Date